[Civ. No. 7604. Third Dist. Sept. 29, 1949.]

J. C. HALBERT, Appellant, v. C. V. JONES et al., Respondents.

784

Preston, Braucht & George and Howard C. George for Appellant.

Adams, Griswold, Winton & Mayes and Don C. Mayes for Respondents.

PEEK, J.—By this action plaintiff, as lessee of certain lands situated in Merced County, sought a declaration of his rights and duties under a certain lease agreement entered into with the defendant as lessor. The complaint alleged that plaintiff had been evicted by the act of defendant in farming a portion of the leased premises and that plaintiff's duty to pay rent was thereby terminated. The defendant filed both an answer and a cross-complaint. In the first he denied that plaintiff had been evicted and in the second he sought the rent alleged to be due under the lease and damages for certain items of personal property allegedly removed from the premises by plaintiff. Plaintiff's answer denied generally the allegations of said cross-complaint. Upon the questions so presented the case was tried before the court sitting without a jury, and at the conclusion thereof findings of fact favorable to defendant were adopted. From the resulting judgment in favor of the defendant upon his cross-complaint, plaintiff has appealed.

Plaintiff's main attack is directed at those findings wherein the trial court found that by a written agreement the plaintiff leased 49 acres of land from defendant as a gravel pit, with the right to remove therefrom sand, gravel, and surface dirt for a period of five years from August, 1943, to August, 1948, but that said written lease did not embody the entire agreement of the parties, the specific findings being that a "part" of the agreement was "oral"; that the plaintiff orally agreed that the defendant might use certain portions of the leased premises for farming purposes during the term of the lease as long as he did not interfere with plaintiff's right to remove sand, gravel and dirt from the land; that plaintiff "felt that it was beneficial to him" for defendant to so use the leased premises so that the undergrowth thereon could be kept under control, and that pursuant thereto defendant did farm "to a more or less extent" certain portions of the leased property during the years 1944 to 1947 inclusive.

It is appellant's contention (1) that the trial court erred in admitting evidence of the oral agreement as found by the court, and (2) that the findings are not supported by the evidence and (3) therefore do not sustain the judgment.

The pleadings of the parties would appear to sustain plaintiff's first contention since defendant by his answer admitted execution of the lease (a copy of which was attached to and incorporated in the complaint), and since no provision appears in that document reserving any right whatsoever in the lessor to enter and farm the demised premises, and since

defendant's answer contains no allegation of any kind relative to an oral agreement between the parties giving such right to defendant, that therefore the admission of any evidence of an oral agreement violated the parol evidence rule, and that the subsequent finding of the court that the lease did not embody the entire agreement between the parties but that part of said agreement was oral, was a finding upon an issue not raised by the pleadings. To this might be added the further observation that said last mentioned finding also is inconsistent with what respondent now contends the evidence to be and with what he advances as one of his theories of the case, · that is, that the oral agreement was subsequent to the written lease.

It is the settled rule that findings contrary to the facts admitted by the pleadings are outside the scope of the issues raised by such pleadings and must be disregarded on review. (*Stoneman* v. *Fritz*, 34 Cal.App.2d 26 [92 P.2d 1035] ; *Beatty* v. *Pacific States Savings & Loan Co.*, 4 Cal.App.2d 692 [41 P.2d 378].) While it is true, as respondent asserts, that his answer alleges that he was acting with the "consent" of plaintiff, such an allegation is insufficient to raise an issue as to the existence of an oral agreement not embodied in the written lease, the execution of which was admitted.

The further findings that the defendant "farmed to a more or less extent" certain portions of the property during certain years mentioned without any objection from plaintiff, and that all of defendant's farming operations during the term of the lease were done with the knowledge, consent and approval of plaintiff, are likewise insufficient to sustain the judgment. Defendant nevertheless contends that by such findings the court in effect found that he had a license to farm portions of the leased premises, and therefore the question concerning the oral agreement becomes immaterial. Assuming that the court so intended, still such findings are too uncertain to support the judgment.

The only evidentiary basis for such license, according to defendant's argument, consists of the conduct of plaintiff in not objecting to farming operations in the years 1944, 1945 and 1946. The record in this regard discloses that such operations were conducted upon relatively small portions of the premises and did not materially interfere with plaintiff's operations in removing gravel, sand and dirt. However, in 1947, defendant cleared and leveled approximately 8 acres or as plaintiff contends about one-third of the premises then

remaining for use as contemplated by the lease, and planted a crop of tomatoes. While defendant testified that plaintiff must have known he was doing this because of his presence on the premises, plaintiff testified that he in fact had no knowledge thereof until the work had been completed and the crop planted. It is not disputed that defendant neither sought plaintiff's permission nor did he notify him of his intention. Assuming that because of such conduct defendant thereby became a licensee to enter, clear the land and plant crops in 1947, such license would necessarily be dependent upon the inference, if any, which could be drawn from plaintiff's passive consent to the work performed by defendant in prior years. But, as it is impossible to determine whether defendant's acts in 1947 were within the scope of such license in view of the uncertainty of the court's finding in regard thereto, namely that the defendant farmed certain portions of the property in the years 1944, 1945 and 1946 to a "more or less extent," such findings do not sustain the judgment.

■ The further findings that the defendant did nothing to render the premises unfit or unsuitable, in whole or in part, for the purposes for which they were leased, is contrary to the undisputed evidence that his act in leveling the 8 acres in 1947 prior to planting the tomato crop spread "Johnson grass" roots through that portion of the soil which rendered it unfit for use as topsoil. The evidence also discloses that plaintiff had built up a substantial business in the sale of topsoil removed from the leased premises. Thus, such actions by defendant did deprive plaintiff of the beneficial enjoyment of the premises since, as previously stated, defendant's farming operations covered nearly one-third of the remaining premises or substantially all of what remained for the uses contemplated by the lease. In this regard it should be noted also that the oral agreement found by the court only permitted the defendant to farm certain portions of the premises so long as he did not thereby interfere with plaintiff's right to remove gravel, sand, and surface soil.

■ The rule is well established that any interference by a landlord by which a tenant is deprived of the beneficial enjoyment of the premises amounts to a constructive eviction if the tenant so elects and surrenders possession, and the tenant will not be liable for rentals for the portion of the term following the eviction. (*Kulawitz* v. *Pacific Woodenware & Paper Co.*, 25 Cal.2d 664 [155 P.2d 24].)

Further inconsistencies appear in the court's findings in regard to the possession of the leased premises. First it found that while plaintiff gave notice to defendant on June 30, 1947, that he would drop the lease on September 1, he did not surrender possession until October, 1947, and second, it found that plaintiff remained in actual possession during the full term of the lease which did not expire until August, 1948. Thus it is apparent that such findings are irreconcilable.

For the foregoing reasons the judgment is reversed.

Adams, P. J., and Thompson, J., concurred.